[No. 5245.    Decided April 3, 1905.]

HERMAN QUANDT *et al., Respondents,* v. FIDELITY AND
DEPOSIT COMPANY OF MARYLAND, *Appellant.*[1]

BONDS—SUPERSEDEAS—ACTION FOR DAMAGES IN BEING KEPT OUT
OF POSSESSION OF PREMISES—EVIDENCE—ADMISSIBILITY.    In an
action upon a supersedeas bond for damages in being kept out of
possession of premises awarded by the judgment, the defendant
is not prejudiced by the exclusion of evidence on collateral mat-
ters not affecting the question of possession.

SAME.    In such a case a lease of the premises is admissible to
impeach the defendant's testimony that he was in possession
under an oral agreement, and for the purpose of showing the
terms of the lease.

SAME.    In such a case, evidence that the defendant consented
to a change in a contract affecting his earning ability is admis-
sible upon an issue as to whether the plaintiff wrongfully brought
about such a change in the status of the defendant.

SAME—DEFENSES—RELEASE OF SURETY—AGREEMENT AFFECTING
STATUS OF PRINCIPAL—WAIVER—PRINCIPAL AND AGENT.    In an
action upon a supersedeas bond given by a compensated surety,
an agreement affecting the status of the principal lessening his
earning ability or the value of the premises retained by him by
virtue of the bond, does not release the surety, since the principal
acts as agent of the surety company.

Appeal from a judgment of the superior court for King
county, Morris, J., entered November 18, 1903, upon the
verdict of a jury rendered in favor of the plaintiffs, in an
action upon a supersedeas bond.    Affirmed.

[1]Reported in 80 Pac. 287.

*Wilshire & Kenaga* and *James Kiefer,* for appellant, contended, among other things, that there could be no liability on the bond if the premises were surrendered, in whole or in part; the use of the saloon doors was as much a part of Smith's holdings as the other part of the premises, and his consent that they be closed released the surety. *Large v. Steer,* 121 Pa. St. 30, 15 Atl. 490; Hilliard, Injunctions, 84; *Bank of Monroe v. Gifford,* 65 Iowa 648, 22 N. W. 913; *Penny v. Holberg,* 53 Miss. 567; *Bemis v. Gannett,* 8 Neb. 236; *Nichols v. Palmer,* 48 Wis. 110, 4 N. W. 137; *Farrar v. Kramer,* 5 Mo. App. 167; *Penn v. Collins,* 5 Rob. (La.) 213; *Dills v. Cecil,* 67 Ky. 579; *Allen v. Kellam,* 94 Pa. St. 253; *Collins v. Ball,* 31 Hun 187.

*Ralph Simon,* for respondents.

HADLEY, J.—This is an action to recover upon a supersedeas bond. In the year 1901, the plaintiffs, in an action brought for the purpose, obtained judgment against the defendant C. M. Smith, for the possession of certain premises in Seattle. Smith appealed from said judgment to this court, and gave a supersedeas bond with the Fidelity & Deposit Company of Maryland as surety therein. The judgment was affirmed by this court. 28 Wash. 664, 69 Pac. 369. Pending the appeal, the possession of the premises remained in Smith, and plaintiffs, by reason of the supersedeas bond, were prevented from enforcing their judgment for possession. After the appeal was determined, this suit was brought against Smith and his surety upon the supersedeas bond. A trial was had before a jury, and a verdict was returned in favor of plaintiffs for $1,760. The surety company moved for a new trial, which was denied, and judgment was entered for the amount of the verdict. The surety company has appealed.

The first point urged as error is that the court sustained an objection to a question put to defendant Smith. The question was as follows: "Now, when you rented this place from Mr. Quandt, Mr. Smith, was there any arrangement or agreement made as to who should have the exclusive sale of liquor upstairs?" The objection was that the defense related to respondents' interference with Smith's possession of saloon premises, and that any question as to who should have the exclusive privilege of selling liquor in the adjoining hotel was collateral. The court sustained the objection upon that theory, and stated that, even if such a contract concerning the exclusive sale of liquors in the hotel had been made at the time the lease for the saloon premises was made, it was collateral to the lease, and that any violation of the liquor contract would not have prevented Smith from enjoying possession of the saloon premises. Appellant urges that it desired to show that the liquor contract was a part of the lease contract. In any event, however, neither the alleged feature of the contract concerning liquor sales, nor its violation, affected the question of possession. We do not find that appellant was prejudiced by the ruling.

It is next urged that the court erred in admitting in evidence a lease between the respondents and Newman & Lavine, for the same premises. Smith had purchased said lessees' interests under that lease, and had entered into possession in pursuance of such purchase. When testifying he claimed that the lease was set aside, and that he occupied under an oral agreement. This was not conceded by respondents, and they sought to show that, upon the trial of the suit for possession, Smith had testified that he entered into possession under the terms of the Newman & Lavine lease. By way of impeachment of the witness, and for the purpose of showing the terms of that lease,

it was admitted in evidence, and we think it was not error to admit it.

The next contention is that the court erred in denying appellant's motion to strike all testimony in the case concerning the alleged consent of Smith to the closing of the doors between his saloon and the hotel. The answer alleged that the lease contract provided that these connecting doors should be kept open, so as to permit direct passage from the leased premises to the hotel. It is further alleged that, pending the appeal, respondents, in disregard of the rights of Smith, nailed up the doors, thereby cutting off his access to the hotel, and interfering with his trade with the guests thereof; that such interference affected the earning power of Smith's business, and changed the status so that he was unable to make the money necessary to indemnify the appellant surety company against its obligation upon the supersedeas bond, which he had agreed to do by way of periodical deposits of cash for that purpose. It is contended upon the motion to strike the testimony concerning Smith's consent to the closing of the doors, that respondents had not pleaded such consent. The answer, however, averred that the doors were closed in disregard of the rights of Smith, and the reply denied that allegation. The issue was therefore made that the doors were not closed in disregard of Smith's rights, and the evidence that the closing was with his consent was pertinent to that issue. The motion to strike it was properly denied.

It is assigned that the court erred in refusing to give the following instruction:

"The jury are instructed that so far as the defendant, the Fidelity & Deposit Company, is concerned, it makes no difference whether Smith consented to the closing of the doors by Quandt or not, and if such closing of the doors lessened the value of the premises, the verdict of the jury,

should be for the defendant, the Fidelity & Deposit Company."

The instruction was requested upon the theory that any agreement which affected the status of Smith operated to release the surety. Whatever may be said as to the application of such rule in the case of ordinary sureties, yet it does not apply to the case of a compensated surety, within the holding in *Cowles v. United States Fid. etc. Co.* 32 Wash. 120, 72 Pac. 1032, 98 Am. St. 838. Under the authority of that case, Smith was the agent of the appellant surety company, and if he saw proper to waive the matter of closing the doors, it was within the purview of his agency, and binding upon the surety. The closing of the doors did not affect Smith's possession, and it was to make good to respondents their damages for withholding possession that the supersedeas bond was given. If Smith did anything that lessened the value of the premises he retained by virtue of the bond, then, under the *Cowles* case, as between the surety company and respondents, he must be held to have acted as the agent of the former, in the absence of collusion or fraud, which is neither claimed nor shown. The instruction was properly refused.

It is urged that a new trial should have been granted on the ground that the verdict was against the evidence. We deem it unnecessary to review the evidence here. The jury must have believed the testimony submitted by respondents, that Smith consented to the closing of the doors, or that the closing did not substantially affect his business. That subject was squarely submitted to the jury by the instructions, and they were told that, if Smith did not consent to it, and if his business was substantially affected thereby, they should find for appellant. We shall therefore not disturb the verdict.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.